**Electronically Filed
Supreme Court
SCWC-21-0000311
08-SEP-2025
12:37 PM
Dkt. 23 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF THE ELAINE EMMA SHORT REVOCABLE
LIVING TRUST AGREEMENT, DATED JULY 17, 1984, AS AMENDED

SCWC-21-0000311

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000311; CASE NO. 1TR151000165)

SEPTEMBER 8, 2025

RECKTENWALD, C.J., MCKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.    INTRODUCTION

This case arises from a request for attorneys' fees relating to a petition for instructions regarding the distribution of principal from a trust.  Contingent remainder beneficiaries contested the distributions.  We overturned the probate court's initial grant of the petition for instructions because the probate court did not enter an order required under

Rule 20(a) of the Hawai'i Probate Rules (HPR).[1]  On remand, the probate court again did not enter an HPR Rule 20(a) order and on subsequent appeal the Intermediate Court of Appeals (ICA) again remanded.

The contingent remainder beneficiaries seek review of the probate court's denial of their motion for attorneys' fees, which the ICA affirmed as independent of the probate court's failure to enter the HPR Rule 20(a) order.  We hold that the proper test for determining whether a probate court may award trust litigants attorneys' fees is whether their appearance assisted the court in resolving the dispute before it.  A decision on the merits is necessary before determining if an award of attorneys' fees is proper.  Because the ICA vacated the circuit court's decision on the merits in this case, its affirmance of the probate court's denial of fees was premature.

---

[1] HPR Rule 20 provides in relevant part:

> **(a) Assignment.**  The court by written order may retain a contested matter on the regular probate calendar or may assign the contested matter to the civil trials calendar of the circuit court.
>
> . . . .
>
> **(d) Procedures in Retained Contested Matters.**  Whenever the court retains jurisdiction of a contested matter as a probate proceeding, the court in the order of assignment may, at the request of the parties, designate and order that any one or more of the Hawai'i Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter.

Accordingly, we vacate the ICA's judgment affirming the probate court's denial of the motion for attorneys' fees and remand the case to the probate court.

## II.  BACKGROUND

The facts and much of the procedural history are laid out in In re Elaine Emma Short Revocable Living Trust Agreement Dated July 17, 1984, as Amended (Short Trust II), 147 Hawai'i 456, 465 P.3d 903 (2020).  Elaine Emma Short (Elaine) was married to Clarence Short (Clarence) and they had two sons, David Short (David) and William Short (William).  Id. at 459, 465 P.3d at 906.  Elaine's brother, Leroy Cook, had five children (collectively, "the Cooks").  Id.  In 1984, Elaine established a revocable living trust ("initial trust"), as did Clarence ("Clarence's trust"), for the purpose of providing for each other, as well as their two sons.  Id.  Elaine named Clarence as the trustee of her estate, with David, William, and First Hawaiian Bank (FHB) as successor trustees.  Id.

Article V.B. of the initial trust provided that, if Elaine was not survived by her spouse, subtrusts would be created for her sons from which the successor trustee could distribute principal and income to David and William as needed. Id. at 459-60 n.2, 465 P.3d at 906-07 n.2.  On March 10, 1993, Elaine amended the trust, including Article V.B.(a), "to provide

3

the Successor Trustee with full discretion to withhold distribution of income to David and William if warranted by the circumstances[.]" Id. at 460, 465 P.3d at 907. The amended trust provided only for the distribution of income, and not principal, from the subtrusts to meet the sons' needs for "health, education, support, and maintenance," as determined by the Successor Trustee. Id. Additionally, the amended trust failed to provide for termination of the sons' subtrusts. Id.

William passed away, unmarried and without children, on June 8, 1993, and Clarence passed away on April 10, 2010, both predeceasing Elaine. Id. Elaine became incapacitated in 2005 and passed away on January 3, 2012. Id. David is unmarried and has no children. Id.

## A. Initial Proceedings[2]

On August 12, 2015, trustee First Hawaiian Bank (FHB) filed a petition to modify Elaine's trust. FHB, through its petition, sought to:

> (1) instruct the trustee that David's subtrust created under Amended Article V.B.(a) of Elaine's Trust terminate upon the death of David; (2) instruct the trustee that discretionary distributions of principal may be made from David's subtrust; and (3) modify Elaine's Trust to provide for a termination date and the discretionary distribution of principal, by amending Article V.B.(a); and (4) allow payment of FHB's attorneys' fees and costs. In the

---

[2] The Honorable Judge Derrick H.M. Chan presiding.

4

> petition, FHB listed the Cooks as heirs at law and
> contingent beneficiaries under Elaine's Trust.

Id. at 461, 465 P.3d at 908 (footnote omitted).

In the 2015 probate proceeding, the Cooks contested the petition. While agreeing that David's subtrust should terminate at David's death, the Cooks opposed FHB's proposed modification allowing the distribution of principal to David. Id. In addition, the Cooks argued that "Elaine's Trust was not ambiguous as to the permitted distribution of the principal . . . and thus FHB's attempt to change the language of Elaine's Trust should be rejected as improper." Id. Also, the Cooks sought reimbursement for their attorneys' fees. Id.

FHB responded, arguing that "its petition properly sought clarification of its duties under Elaine's Trust" because "permitting discretionary distributions of principal to David would be in furtherance of Elaine's intent to provide for her sons and any issue they might have." Id. at 462, 465 P.3d at 909. Further, FHB argued the trust was ambiguous because, while it did not explicitly authorize distributions of principal, it also "did not expressly prohibit such action" either. Id. Addressing the question of attorneys' fees, FHB asserted that "payment of attorneys' fees to the Cooks from the principal [w]as a potentially improper use of trust assets for

non-beneficiaries because the Cooks were contingent beneficiaries." Id.

David responded, agreeing with FHB and the Cooks "as to setting a proposed termination date for Elaine's Trust" but siding with FHB over the Cooks "that [David] should receive discretionary distributions of principal from Elaine's Trust[.]" Id. David reasoned that "Elaine's Trust merely contains an 'Armageddon clause' referencing 'heirs at law,'[3] which does not provide a sufficient basis for the Cooks to frustrate Elaine's primary intent to benefit her sons." Id. at 463, 465 P.3d at 910.

After a hearing on the matter, the probate court entered an order "modifying Elaine's Trust to provide for discretionary payments of principal to David and terminating his subtrust under Amended Article V.B.(a) and (b) at his death." Id. The probate court also concluded that the Cooks were not entitled to financial information from FHB. Id. Finally, the probate court "ordered that the attorneys' fees for all parties

―――――――――――――――――――

[3] An "Armageddon clause" is a trust provision that disposes of the trust corpus "in the (presumably unlikely) event that all of the settlor's descendants or other individual beneficiaries should fail to survive to the end of the trust term." Benjamin H. Pruett, Tales from the Dark Side: Drafting Issues from the Fiduciary Perspective, 2011 ABATAX-CLE 1022087, 2011 WL 5827897 (Oct. 27, 2011).

6

involved in the proceedings be paid from the principal of Elaine's Trust." Id.

The Cooks appealed the probate court's judgment and order, asserting two points of error:

> (1) in permitting the Bank to modify Art. V, paragraph B of the Trust, allowing Bank to invade the Trust corpus to make discretionary principal distributions; and (2) when it failed to require Bank to provide financial information to the Cooks relating to the Trust, including David's total income, and David's income from the Clarence Trust.

In re Elaine Emma Short Revocable Living Tr. Agreement Dated July 17, 1984, as Amended (Short Trust I), 2019 WL 2417367, at *4 (App. June 10, 2019) (mem. op.).

David cross-appealed, contending that the probate court abused its discretion when it granted the Cooks' request to have their attorneys' fees and costs paid from the Trust. Id.

The ICA affirmed the probate court "in all respects except as to the grant of the Cooks' attorneys' fees and costs which were to be paid out of the Trust," which the ICA reversed. Id. at *12.

The Cooks then sought review by this court, contending that the ICA erred in the following:

> (1) after finding an ambiguity in the trust, weighing conflicting evidence to determine Elaine's intent and ignoring other evidence to resolve the ambiguity without holding a hearing as required for contested matters under Hawai'i Probate Rules (HPR) Rules 19 and 20; (2) affirming the probate court's decision to deny the Cooks any financial information regarding Elaine's Trust despite the trustee's statutory duty to produce this information; and

7

> (3) determining that the probate court abused its discretion in awarding attorneys' fees and costs to the Cooks.

Short Trust II, 147 Hawai'i at 464, 465 P.3d at 911 (internal footnotes omitted).

We accepted certiorari. As to the first contention, we held that the ICA "erred in affirming the probate court's Order and judgment instead of remanding the case to the probate court with instructions to render findings of fact." Id. at 467, 465 P.3d at 914.

We reasoned that,

> The probate court's written Order in this case allowed FHB to modify Elaine's Trust to provide for the distribution of principal to David. The Order, however, contained no findings of fact as to whether Amended Article V.B.(a) was ambiguous. . . . In short, the probate court did not articulate the factual basis of its ruling.

Id. at 465, 465 P.3d at 912.

Additionally, we addressed the application of HPR Rule 20, which provides, "[t]he court by written order may retain a contested matter on the regular probate calendar or may assign the contested matter to the civil trials calendar of the circuit court." HPR R. 20(a). We explained that, "[a]lthough the probate court is not obligated to adopt any and all rules that the parties request, it must exercise its discretion to do so 'with regard to what is right and equitable under the circumstances and the law.'" Short Trust II, 147 Hawai'i at 469,

465 P.3d at 916. By not issuing an HPR Rule 20 order, "the parties were not provided an opportunity under HPR Rule 20(d) to request that the probate court adopt [Hawai'i Rules of Civil Procedure] Rule 52 and render findings of fact at the time an order of retention should have been issued." Id. We further reasoned:

> [W]hile the probate rules do not specifically require findings in all contested cases retained by the probate court, their omission in a dispositional ruling may require an appellate court to remand the case for the making of findings to enable the appellate court to meaningfully review the probate court's decision.

Id. at 471, 465 P.3d at 918.

Thus, we concluded that we were unable to conduct an appropriate appellate review due to the "complete absence of findings by the probate court preclud[ing] us from being able to determine which facts the court relied upon[,] and which underlay the court's modification of Elaine's Trust."[4] Id.

As to the second contention, we held that "the ICA erred in holding that the terms of Elaine's Trust can supersede HRS § 560:7-303 [(2006)] to limit which beneficiaries are entitled to trust and accounts information from the trustee."

---

[4] In a separate opinion concurring in part and dissenting in part, the minority would have affirmed the ICA as to this question. The dissent argued that our caselaw and the HPR did not require the probate court to enter findings of fact under the circumstances there at issue and, as such, the ICA properly reviewed the extrinsic evidence in the record to affirm the probate court. Short Trust II, 147 Hawai'i at 478, 465 P.3d at 925 (Recktenwald, C.J., concurring in part and dissenting in part).

9

Id. at 474, 465 P.3d at 921. We explained that HRS § 560:7-303 requires a trustee to "'keep the beneficiaries of the trust reasonably informed of the trust and its administration.' Hawai'i law is clear that a trust beneficiary is any person with a 'future interest, vested or contingent.' HRS § 560:1-201 (2006) (emphasis added)." Short Trust II at 472, 465 P.3d at 919. Thus, we concluded that "[w]hile their interest may be divested if a greater claim arises, this does not mean that the Cooks are not currently reasonably entitled to accounts information regarding Elaine's Trust as provided by HRS § 560:1-201." Id. at 474, 465 P.3d at 921.

Finally, this court acknowledged but did not reach a decision regarding the Cooks' third contention that the ICA erred in determining that the probate court abused its discretion in awarding attorneys' fees and costs to the Cooks. See id. at 464, 465 P.3d at 911.

Ultimately, we vacated and remanded the proceeding as follows:

> [T]he ICA's August 1, 2019 Judgment on Appeal is vacated, except as to its affirmance of the denial of account information to the Cooks from Clarence's Trust. The probate court's judgment and Order are also vacated except as to its ruling regarding providing account information from Clarence's trust. The case is remanded to the probate

10

> court for further proceedings consistent with this
> opinion.[5]

Id., at 475, 465 P.3d at 922.

## B.    Proceedings on Remand[6]

On September 29, 2020, FHB filed a new Petition for Instructions Regarding Principal Distributions and Attorneys' Fees, and for Modification of Trust in its capacity as trustee for the Elaine Short Trust.  In its petition, FHB requested that the probate court:

> (a) issue a formal order retaining this matter in the
> Probate Court (assuming an objection is filed, which would
> make the petition contested under HPR 19); (b) consider the
> evidence proffered in this Petition; and (c) render
> findings of fact and conclusions of law in Petitioner's
> favor on the unresolved questions.  These questions include
> whether to modify the Trust to allow distributions of
> principal to David and determining whether the Contingent
> Remainder Beneficiaries may receive attorneys' fees from
> the Trust.

On March 5, 2021, the probate court entered written findings of fact and conclusions of law regarding FHB's September 29, 2020, Petition for Instructions Regarding Distributions and Attorneys' Fees, and for Modification of Trust.  The probate court made the following relevant findings of fact:

---

[5]    Because the Cooks did not challenge in their application for certiorari the ICA's holding that they were not entitled to accounting information for Clarence's trust, the Short Trust II court did not address the issue.  Short Trust II, 147 Hawai'i at 464 n.15, 465 P.3d at 911 n.15.

[6]    The Honorable Judge R. Mark Browning presiding.

11

Contingent Beneficiaries

29. The Trust does not mention the Contingent Beneficiaries by name and the Contingent Remainder Beneficiaries will only receive an interest as "heirs-at-law" if there are no surviving issue of the Settlor remaining. Had the Settlor intended to provide for the Contingent Remainder Beneficiaries, she could have left a specific devise or devised a portion of the trust estate to the Contingent Remainder Beneficiaries. That the Settlor did not is indicative of her overarching intent with her Trust, especially as compared to the specifically stated, and unquestionably clear, intent to provide for her sons.

30. The Settlor's primary intent in creating the Trust is to provide support for her issue. Currently, David is the Settlor's last surviving issue. If the Trustee were to distribute income only to David, David would not be the primary beneficiary of the Trust. Instead, the Contingent Remainder Beneficiaries, the Settlor's heirs at law, would primarily benefit from the trust estate because the Settlor's heirs at law would receive the bulk of the trust estate. It does not appear that the Settlor intended such a result.

31. The Petitioner included a declaration from Carol Short with the Petition. Carol Short is the surviving spouse of Robert Short, who was the brother-in-law of the Settlor. Carol Short knew Elaine and Clarence for 40 years and was in regular contact with Settlor before her death. Among other things, Carol Short attests that Elaine never mentioned the Contingent Remainder Beneficiaries. The Court finds this declaration to be both credible and persuasive. Based on this declaration, the Settlor was not close to her nieces and nephews or extended family members. Prior to the death of the Settlor, there had been little to no contact between the Settlor and the Settlor's siblings, nieces or nephews in decades.

32. The Settlor's nieces and nephews are beneficiaries, as an alternative, only if there are no remaining issue of the Settlor then surviving. Based on these facts, in all likelihood, the Settlor did not anticipate that William would predecease the Settlor without issue, and that David would also have no issue.

33. The Court rejects the declarations submitted by the Contingent Remainder Beneficiaries. The declarations are self-serving, looking to establish extrinsic evidence of a "warm relationship" between the Contingent Remainder Beneficiaries and Settlor. The Court finds these declarations not credible and also unpersuasive. Even considered on their merits, these declarations are insufficient to overshadow Settlor's intent as to her Trust, as evidenced by the text of the Trust itself.

34. Beyond these general considerations, the Court also disregards the Declaration of Marcia M. Kleeberger because it is based on hearsay, not personal knowledge. Even if this declaration were based on personal knowledge, it does not offer sufficient evidentiary basis to conclude that Elaine had such a close and warm relationship with the Contingent Remainder Beneficiaries such that Elaine intended her Trust to benefit the Contingent Remainder Beneficiaries over her own children and grandchildren. Nor do the terms of the Trust support such a conclusion.

35. The Contingent Remainder Beneficiaries also offer the Declaration of Susan Kay Cook Galvin dated September 15, 2015 (the "Galvin I Declaration") and the Supplemental Declaration of Susan Kay Cook Galvin dated October 29, 2015 (the "Galvin II Declaration") as evidence of the alleged warm and close relationship between Elaine and the Contingent Beneficiaries. The Court concludes that the facts offered in these declarations (regarding significant life events in the 1960s, 1970s, 1980s, and 1990s) do not offer sufficient evidentiary basis to conclude that Elaine had such a close and warm relationship with the Contingent Remainder Beneficiaries such that Elaine intended her Trust to benefit the Contingent Remainder Beneficiaries over her own children and grandchildren. Nor do the terms of the Trust itself support such a conclusion.

36. On this point, the Court notes that Elaine created the original Trust instrument on July 17, 1984, and amended the Trust on March 10, 1993. Elaine also executed the Last Will and Testament of Elaine Emma Short on September 4, 1979, which was probated in Elaine's probate proceeding, P. No. 13-1-0671. According to the Galvin II Declaration, Elaine visited the Contingent Remainder Beneficiaries several times prior to the creation of the Trust, and during the period she created and amended her Trust. During this same time period, Elaine failed to devise a portion of the trust estate to the Contingent Remainder Beneficiaries and failed to specifically name any of the Contingent Remainder Beneficiaries in any of her estate planning documents. Additionally, Elaine failed to provide for the Contingent Remainder Beneficiaries in any respect in Elaine's Will, even though Elaine and Clarence visited the Contingent Remainder Beneficiaries in the years prior to signing Elaine's Will in 1979. Contingent Remainder Beneficiaries' argument that she must have intended to provide for them due to the "warm relationship," is therefore unpersuasive.

37. As to Contingent Remainder Beneficiaries' request for attorneys' fees, the Court finds that their status cannot presently be ascertained. Currently, the only known and ascertained beneficiary of the Trust is David. At this time, the remainder beneficiaries cannot be ascertained. If David were to have issue at his death, the Contingent Remainder Beneficiaries would cease from being

13

beneficiaries of the Trust. Additionally, if any of the Settlor's current heirs at law fail to survive David, they would no longer be contingent remainder beneficiaries of the Trust.

38. To the extent these findings of fact should be construed as conclusions of law, they shall be so construed.

(Emphasis added.)

The probate court also concluded that the Cooks were not entitled to payment of their attorneys' fees out of the trust. Relying on Von Holt v. Williamson, 23 Haw. 245, 248-249 (Haw. Terr. 1916), where this court held "It is well established that fees of counsel for a litigant whose interest is contingent cannot be allowed out of the trust fund," the probate court concluded that "the payment of attorneys' fees and costs for the Contingent Remainder Beneficiaries, relating to the 2015 Petition, the appeal of the 2015 Petition, and this Petition, are not properly payable from the Trust." Further, relying on In re Estate of Campbell, 46 Haw. 475, 522, 382 P.2d 920, 953 (1963), for the proposition that "a beneficiary may be awarded attorneys' fees and costs from a trust or estate only where the beneficiaries' participation in the case advances the interest of all beneficiaries," the probate court concluded that "the Contingent Remainder Beneficiaries' position was self-serving and clearly did not benefit the interests of all beneficiaries. Accordingly, the Contingent Remainder Beneficiaries' request for attorneys' fees and costs is denied."

Therefore, the probate court ordered: "The Contingent Remainder Beneficiaries are not entitled to the payment of their attorneys' fees incurred in connection with this Petition and the Petition for Instructions Regarding Distribution and Termination, and for Modification of Trust filed in herein [sic] on August 12, 2015[.]" Judgment on the order was filed on April 6, 2021.

The Cooks appealed the probate court's April 6, 2021, judgment. In their opening brief on appeal, the Cooks asserted three points of error:

> (A) The court erred in permitting Trustee First Hawaiian Bank to modify subparagraph B of Article V of the trust, allowing Trustee First Hawaiian Bank to invade the Trust corpus to make discretionary principal distributions.
>
> (B) The court erred when it resolved disputed issues of material fact without an evidentiary hearing.
>
> (C) The court erred in refusing to consider an award of attorneys' fees to the Remainder Beneficiaries where they were made parties to the proceeding in order to bind all remainder beneficiaries.

Relying on Graham v. Washington University, 58 Haw. 370, 569 P.2d 896 (1977), the Cooks argued that "[t]he probate court should have held an evidentiary hearing to fairly resolve . . . disputed issues of material fact rather than picking and choosing what extrinsic evidence it intended to credit." They also argued that the standard in summary judgment cases should have been applied in viewing underlying facts in the record "in

the light most favorable to the party opposing the motion." Id. at 374, 569 P.2d at 899 (citation omitted).

Next, the Cooks argued that remainder beneficiaries should not be precluded from receiving an award of fees from the trust. The Cooks relied on Bishop Trust Co. v. Jacobs, 36 Haw. 686, 691 (Haw. Terr. 1944), and Valentin v. Brunette, 26 Haw. 498, 499 (Haw. Terr. 1922), for the proposition that probate courts have discretion to award fees upon determining the remainder beneficiaries' position was helpful to resolve an ambiguity in the trust and that such was the case here.

The Cooks further argued that, under In re Estate of Campbell, recovery of fees by all parties is permitted "when litigation is in advancement of, and not in opposition to, the interests of all the beneficiaries of a trust." 46 Haw. at 522, 382 P.2d at 953. The Cooks contended that their participation in the litigation was to the benefit of all parties involved, "including any unascertained beneficiaries - Elaine's descendants - who may benefit from her Trust in the future," by "ensur[ing] the Trust is administered properly" for the benefit of all potential beneficiaries, including issue David may have in the future.

The ICA entered a Summary Disposition Order on October 25, 2024.

16

The ICA determined that the probate court failed to follow this court's direction in Short Trust II because the probate court again decided the issue without first issuing an HPR Rule 20(a) order.  Therefore, the ICA vacated the probate court's findings of disputed facts because the probate court's failure to enter an HPR Rule 20(a) order was structural error and "[t]his structural error was a departure from the supreme court's mandate, and requires another remand of the contested matter."

As is relevant to this appeal, the ICA then concluded that the Cooks' request for attorneys' fees to be paid from Trust principal "arises independent of the probate court's failure to enter an HPR Rule 20(a) order."  Aside from acknowledging that there was no law of the case relevant to this issue, the ICA did not further explain its reasoning and cited no authority in support of its conclusion that the two issues arise independent of each other.

Addressing the issue of attorneys' fees, the ICA relied on this court's statement in Von Holt that "[i]t is well established that fees of counsel for a litigant whose interest is contingent cannot be allowed out of the trust fund" and concluded that "[t]he Cooks are at most contingent remainder beneficiaries of Elaine's Trust."  23 Haw. at 248-49.

17

The ICA recognized an exception to the rule requiring parties to bear their own fees and costs when "the party advances 'the interests of all beneficiaries of a trust.'" (Quoting In re Estate of Campbell, 46 Haw. at 522, 382 P.2d at 953.) The ICA reasoned that the Cooks did not fall under the In re Estate of Campbell exception because they "tried to advance their own interests, which were opposed to those of David, the primary trust beneficiary."

Thus, the ICA concluded that "[t]he probate court applied the correct Hawai'i law. It did not abuse its discretion by following the law and denying attorneys['] fees to the Cooks." Ultimately, the ICA affirmed the probate court only as to the denial of attorneys' fees and otherwise vacated and remanded the case for resolution of the contested matters following entry of an HPR Rule 20 order, provided that "[o]n remand, the probate court may assign the contested matter to the circuit court civil trials calendar under HPR Rule 20(b) if the probate court considers it appropriate."

The Cooks then sought certiorari review of the ICA's affirmance of the probate court's denial of attorneys' fees, which this court granted. In their application for writ of certiorari, the Cooks present two related questions:

> (1) Whether the ICA gravely erred when it affirmed the probate court's decision to deny a fee award made by a

prior probate court without requiring the entry of an HPR Rule 20(a) order.

(2) Whether the ICA gravely erred in affirming the probate court's reversal of the prior probate court's award of fees where the Trustee served the Remainder Beneficiaries with process to make them parties to the proceeding to bind them and all remainder beneficiaries and where the Remainder Beneficiaries were successful in requiring the Trustee to provide financial information for the benefit of all beneficiaries and where material questions of fact remain regarding the Settlor's intent in establishing and amending the Trust.

### III. STANDARD OF REVIEW

"This court reviews a lower court's award of attorneys' fees for abuse of discretion." In re Tr. Agreement Dated June 6, 1974, 145 Hawai'i 300, 309, 452 P.3d 297, 306 (2019).

> The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. In other words, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Id. at 310, 452 P.3d at 307 (citation and quotation omitted).

### IV. DISCUSSION

The Cooks seek an award of attorneys' fees and costs in both the initial probate proceedings and now in the proceedings on remand.

As discussed below, we vacate the ICA's affirmance of the probate court's denial of attorneys' fees. We do so because the determination that the Cooks' participation in the litigation was not in the interest of the trust and all its

19

beneficiaries was premature in the absence of a decision on the merits of the underlying issue.

## A. The ICA Erred in Affirming the Probate Court's Denial of the Cooks' Attorneys' Fees Without Requiring the Entry of an HPR Rule 20(a) Order

The probate court's denial of the Cooks' attorneys' fees is reviewed for abuse of discretion, and will only be set aside when the court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." In re Tr. Agreement Dated June 6, 1974, 145 Hawai'i at 310, 452 P.3d at 307.

> This court held in Short Trust II that
>
>> when a case is contested the probate court must, through a written order, either assign the case to the circuit court or retain it. HPR Rule 20(a). . . . [I]f the probate court retains the case, the probate court "in the order of assignment may, at the request of the parties, designate and order that any one or more of the Hawai'i Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter." HPR Rule 20(d). Although the probate court is not obligated to adopt any and all rules that the parties request, it must exercise its discretion to do so "with regard to what is right and equitable under the circumstances and the law." Booker v. Midpac Lumber Co., 65 Haw. 166, 172, 649 P.2d 376, 380 (1982) (quoting Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931)).

147 Hawai'i at 468-69, 465 P.3d at 915-16 (emphasis added) (footnotes omitted).

The ICA correctly noted that we did not reach the question of attorneys' fees in Short Trust II, and that, accordingly, "there is no law of the case on this issue." The question now before this court is whether the denial of fees

20

could be properly entered independent of an HPR Rule 20(a) order.  The Cooks argue it cannot because "[a] full and complete record of the facts of the dispute, the roles of the parties involved and the intent of the settlor need to be ascertained before a decision on fees is appropriate in this contested matter."[7]  FHB and David counter that factual findings are not necessary as the award of attorneys' fees is a question of law.[8]

Because, as discussed below, the probate court could not properly conclude that the Cooks' "position was self-serving and clearly did not benefit the interests of all beneficiaries" without first reaching the merits of the case in a manner consistent with the dictates of HPR Rule 20, the denial of the Cooks' fees was not "independent of the probate court's failure to enter an HPR Rule 20(a) order."  The ICA therefore erred when it remanded the case but left the probate court's denial of fees intact.  Thus, we remand the issue of attorneys' fees to the

_____

[7]    The Cooks also contend that the standard in summary judgment cases should apply here.  The Cooks rely on Graham, 58 Haw. at 370, 569 P.2d at 896, where this court remanded for further proceedings a case where the trial court erroneously excluded extrinsic evidence of the testator's intent.  Graham is inapt: there, the probate court had granted a motion for summary judgment, where inferences should properly be drawn in favor of the non-moving party, whereas here the probate court denied a motion for attorneys' fees, which is reviewed for abuse of discretion.

[8]    Both FHB and David also contend that this issue is waived because the error was not preserved below.  However, given that the Cooks raised the need for an evidentiary hearing at the first opportunity, this issue is not waived.

probate court to be decided anew in light of a disposition in compliance with the HPR.

That the Cooks have failed to identify with any specificity what further evidence could have been adduced at an evidentiary hearing does not necessitate another outcome. Here, remand is required so that the probate court can finally decide the threshold question of whether FHB, as trustee, may properly distribute principal to David during his lifetime. Only then may the probate court properly determine if the Cooks' participation was in the best interest of the trust, for example, by finding that their participation, "with their conflicting claims, their evidence and their arguments, was of assistance to the court in its determination of the duty of the trustees." Valentin, 26 Haw. at 498.

**B. The Proper Inquiry for Determining Whether a Trust Litigant's Participation Advanced the Interests of All the Beneficiaries of the Trust is Whether the Party's Appearance Assisted in Clarifying the Duties of the Trustee in the Face of an Ambiguity, Which Requires a Determination on the Merits of the Ambiguity**

In Short Trust II, we did not reach whether the Cooks were entitled to fees despite noting that the question was presented before this court. Short Trust II, 147 Hawai'i at 464, 465 P.3d at 911 ("In their application for writ of certiorari, the Cooks contend that the ICA gravely erred in the following: . . . (3) determining that the probate court abused its

discretion in awarding attorneys' fees and costs to the Cooks."). Nor was the issue addressed in the opinion concurring and dissenting in part. See id. at 475-78, 465 P.3d at 922-25 (Recktenwald, C.J., concurring and dissenting in part). When we vacated the ICA's August 1, 2019, Judgment on Appeal and vacated the probate court's December 16, 2015, judgment and order, we implicitly vacated the probate court's award of attorneys' fees to all parties, including the Cooks. Id. at 475, 465 P.3d at 922. With no law of the case, we address this question anew.

This court has adopted a two-step test to determine whether a party in trust litigation may recover attorneys' fees:

> In summary, the first question in this type of case is whether the proceeding was for the benefit of the estate and in the interest of all parties concerned. If it was "the trust estate should bear the costs and expenses, including a reasonable attorney's fee, of all parties affected and brought before the court." The next question, however, is: To what part of the estate should such expenses be charged? That depends upon the circumstances of each individual case. "Where the suit affects the corpus it is reasonable and proper that the corpus should bear such expenses. Likewise where the suit affects the income generally the general income should bear such expenses. If it affects both the corpus and the general income it should be prorated accordingly." When "neither the corpus of the trust estate nor the general income accrued or to accrue therefrom was affected" then the particular fund affected should bear the expenses of the suit.

In re Estate of Campbell, 46 Haw. at 523-24, 382 P.2d at 954 (quoting Wodehouse v. Robinson, 27 Haw. 602, 603 (Haw. Terr. 1923)).

Trust litigation, like other civil litigation, follows the American rule when it comes to attorneys' fees: "The general

23

rule is that each party to litigation must pay his own counsel fees, in the absence of an agreement or statutory authority for recovery thereof." Id. at 522, 382 P.2d at 953. However, this court has recognized an exception to this general rule: "when litigation is in advancement of, and not in opposition to, the interests of all the beneficiaries of a trust, counsel fees may be allowed to litigants out of the estate." Id.

Our early caselaw held contingent beneficiaries were not entitled to attorneys' fees from the "trust fund." E.g., Von Holt, 23 Haw. at 247-48. In Von Holt, the court resolved a dispute between the testator's daughter and granddaughter concerning entitlement to income from a trust estate that constituted a resulting trust in favor of the daughter. 23 Haw. at 245. The parties then sought attorneys' fees from the corpus of the trust estate. Id. at 245-46. This court characterized the case as

> a friendly controversy between the daughter and granddaughter as to which of them the said income shall go during the life of the daughter . . . and that the trustee appears as a disinterested party, taking sides neither with the mother nor the infant, and that the controversy does not involve the principal trust.

Id. at 246.

This court held that neither party was entitled to attorneys' fees from the trust estate under the facts of the case. Id. at 247. Regarding the daughter, whom the trial court had determined was entitled to the income, the Von Holt court

24

explained that she was not entitled to attorneys' fees from the corpus because "the cost of the suit must be borne by the particular fund concerning which the suit arose." Id. at 248 (quoting 2 Perry on Trusts § 903a (6th ed.)). Thus, because the suit concerned the income from the trust estate, the daughter was not entitled to attorneys' fees from the corpus of the trust estate, but only from its income, to which she was already entitled. See id. at 247-48

Regarding the granddaughter, a contingent beneficiary, this court adopted the test established in Hobbs v. McLean, 117 U.S. 567 (1886), that "the litigation must be in advancement of, and not in opposition to, the interest of all the beneficiaries or no allowance of counsels' fees out of the trust fund will be made." Von Holt, 23 Haw. at 248. Nevertheless, this court held that the granddaughter was not entitled to fees from the corpus of the trust estate because "[i]t is well established that fees of counsel for a litigant whose interest is contingent cannot be allowed out of the trust fund." Id. The Von Holt court distinguished an earlier case, Fitchie v. Brown, 19 Haw. 415 (Haw. Terr. 1909), where this court "authoriz[ed] the payment of the fees of counsel to the various claimants in this case out of the corpus of the trust estate." Von Holt, 23 Haw. at 248. The

court noted that Fitchie involved exceptional circumstances[9] and concluded that that case was not "an authority generally for the payment of counsels' fees for diverse claimants to a particular fund out of the principal trust fund."  Id.

Subsequently, this court's analysis shifted away from a categorical prohibition on awarding attorneys' fees for contingent beneficiaries.  As discussed above, in In re Estate of Campbell, this court stated the rule that "when litigation is in advancement of, and not in opposition to, the interests of all the beneficiaries of a trust, counsel fees may be allowed to litigants out of the estate."  46 Haw. at 522, 382 P.2d at 953.  However, absent provisions to the contrary, the distribution of attorneys' fees from the corpus is only permissible when the corpus is in controversy.  Id. at 523-24, 382 P.2d at 953-54.  Thus, the In re Estate of Campbell court explained:

> Moreover, even when construction of an ambiguous will is involved that does not always warrant payment of attorneys' fees out of corpus as distinguished from income.  When the controversy is in regard to the enjoyment of the income and the litigants have no interest in the corpus or have only a

---

[9]     The Von Holt court characterized the Fitchie case as follows:

> In a contest concerning the construction of a will it is only under exceptional circumstances that the estate of a decedent should bear the expenses of an unsuccessful appeal from a decree of this court. . . .  The question involved in their appeal, however, was novel and important and the amount involved was very large.

Von Holt, 23 Haw. at 248.

> contingent interest, no fee is allowable out of corpus.
> <u>Von Holt v. Williamson</u>, 23 Haw. 245. In such case the
> income or share thereof the disposition of which is in
> controversy should bear the expenses of the suit.
> <u>Wodehouse v. Robinson</u>, supra, 27 Haw. 602. And even when
> the right to the corpus is in litigation, a fee may not be
> paid out of the corpus when the time for distribution has
> not been reached and such payment would reduce the income
> of the life tenant who has no interest in the controversy.
> <u>Bishop Trust Co. v. Cooke Trust Co.</u>, supra, 39 Haw. 641,
> 651 [(Haw.Terr. 1953)].

<u>Id.</u> at 523, 382 P.2d at 953.

Thus, under <u>In re Estate of Campbell</u>, a contingent beneficiary is limited to recovery from the trust's income only if "the controversy is in regard to the enjoyment of the income." <u>Id.</u> Here, the dispute does not involve trust income, but rather distributions from the corpus. As such, <u>In re Estate of Campbell</u> would not bar the Cooks' entitlement to an award of attorneys' fees, provided its two part-test is satisfied. <u>See id.</u> at 523, 382 P.2d at 954.

This shift in approach, permitting recovery from the portion of the trust at issue in the case, as exemplified by <u>In re Estate of Campbell</u>, is consistent with an analysis for which the operative question is not the type of interest held by the litigant, but rather the purpose of the litigant's action, i.e., whether it benefited the trust as a whole. This trend toward focusing on the purpose of the action, rather than the interest held by the litigant, was codified in the 2018 Uniform Trust

27

Code (UTC), which the Hawai'i legislature adopted in 2021.[10] 2021 Haw. Sess. Laws Act 32 at 55-93.  The UTC which provides in relevant part:

> In a judicial proceeding involving the administration, interpretation, or validity of a trust, <u>the court may award reasonable attorney's fees, costs, and expenses to any party to the trust who has acted in the best interest of the trust as a whole</u>, to be paid by another party or from the trust that is the subject of the controversy.

HRS § 554D-1004(a) (Supp. 2022) (emphasis added).

This position is also consistent with the approach announced in Comment D to § 88 of the Restatement (Third) of

---

[10] The Cooks do not argue that UTC governs the resolution of this appeal; instead, the Cooks assert that their interpretation of the law "is consistent with the [UTC], which has been in effect since January 1, 2022." David counters that the UTC "is not application [sic] to this case" because "[t]his proceeding was originally commenced in 2015" and, under HRS § 554-1104(2) (eff. Jan. 1, 2022), "[the UTC] applies to all judicial proceedings concerning trusts commenced on or after January 1, 2022."

Although the UTC was adopted after this proceeding was commenced, the UTC was given retroactive application through HRS § 554D-1104(3), which provides:

> This chapter applies to judicial proceedings concerning trusts commenced before January 1, 2022, unless the court finds that application of a particular provision of this chapter would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which case the particular provision of this chapter shall not apply and the superseded law applies[.]

The probate court proceedings under review here were held prior to the enactment of the UTC.  Thus, it would prejudice the parties to apply the new HRS § 554D-1004(a) to an appeal from those proceedings, which were decided under prior law.  We express no opinion on the retroactive applicability of the provision on remand.

Trusts,[11] which provides that "[a] court may, in the interest of justice, make an award of costs from the trust estate to a beneficiary for some or all of his or her attorney fees and other expenses."  Restatement (Third) of Trusts § 88 cmt. D (Am. L. Inst. 2007).

Under both the UTC and the Restatement (Third) of Trusts, a contingent remainder beneficiary may properly be awarded attorneys' fees if they acted "in the best interest of the trust as a whole."  See HRS § 554D-1004(a); Restatement

---

[11]     Section 88 of the Restatement (Third) of the Trusts, "Power to Incur and Pay Expenses," provides, "A trustee can properly incur and pay expenses that are reasonable in amount and appropriate to the purposes and circumstances of the trust and to the experience, skills, responsibilities, and other circumstances of the trustee."  Comment D to § 88 provides in relevant part:

> A court may, in the interest of justice, make an award of costs from the trust estate to a beneficiary for some or all of his or her attorney fees and other expenses. Ordinarily, however, awards of this type are limited to situations in which the beneficiary's participation in the proceeding is beneficial to the trust, usually either because of a recovery that benefits the trust's beneficiaries generally (rather than merely the beneficiary in question) or by clarifying a significant uncertainty in the terms of the trust.
>
> . . . .
>
> T[rustee] petitions the court for instructions to clarify uncertainties in the meaning of certain distributive provisions of the trust.  The court found that there was need to clarify the provisions, which it concluded were ambiguous, and admitted extrinsic evidence that led to interpretations clarifying the uncertainties.  The court may award appropriate costs to a group of beneficiaries who, in good faith, urged a reasonable but unsuccessful interpretation, as well as to the side that prevailed.

(Emphasis added.)

29

(Third) of Trusts § 88.  As this court emphasized in Short Trust II, "Hawai'i law is clear that a trust beneficiary is any person with a 'future interest, vested or contingent.'"  147 Hawai'i at 472, 465 P.3d at 919 (quoting HRS § 560:1-201 (2006) (emphasis added)).  Thus, the UTC and the Restatement (Third) no longer recognize the distinction made between classes of beneficiaries for purposes of awarding reasonable attorneys' fees.  HRS § 554D-1004(a) (providing "the court may award reasonable attorney's fees, costs, and expenses to any party to the trust who has acted in the best interest of the trust as a whole") (emphasis added); Restatement (Third) of Trusts § 88 cmt. D (permitting award of attorneys' fees to beneficiaries when "in the interest of justice").  Thus, if decided under the UTC, the Cooks could properly be awarded attorneys' fees if the probate court found they "act[ed] in the best interest of the trust as a whole."  See HRS § 554D-1004(a).  While not controlling here, the evolution of the law in the UTC provides persuasive support for a more liberal approach to awarding attorneys' fees in this context.

Courts have found resolving ambiguity in the trust to be in the interest of the trust, In re Estate of Campbell, 46 Hawai'i at 522, 382 P.2d at 953 (noting that "fees have been allowed and charged to corpus when the construction of an

ambiguous will was involved"), particularly when the issues presented are questions of first impression clarifying a trustee's duties, Valentin, 26 Haw. 498. For example, in Valentin, trustees made life-tenants and remainder beneficiaries of the estate parties to a suit seeking instructions as to whether various expenditures should be paid out of the estate's principal or income. 26 Haw. at 498. This court held that "[u]nder these circumstances the case falls within the rule laid down, under somewhat conflicting authorities elsewhere, in Evans v. Garvie, 23 Haw. 694 [(Haw. Terr. 1919),]" that the parties' attorneys' fees could properly be paid out of the corpus of the estate. Valentin, 26 Haw. at 498. The Valentin court reasoned that, as questions of first impression,

> [t]he appearance of the life-tenants and the remaindermen was made necessary by the uncertainty of the trustees as to their duty in the premises and by their petition for instructions. The appearance of these parties, with their conflicting claims, their evidence and their arguments, was of assistance to the court in its determination of the duty of the trustees. In other words, the proceeding was for the benefit of the estate and in the interest of all parties concerned.

Id.

Evans, the case relied upon by the Valentin court, involved a dispute over the apportionment of "extraordinary" stock dividends between a mother, who was entitled to income from the trust during her lifetime, and her son, who was entitled to half of the estate, provided he survived to the age

of 21, with the other half going to the mother's heirs at her passing. 23 Haw. at 695. This court again reasoned that attorneys' fees were warranted because "[i]t was an open question in this jurisdiction, and the decisions elsewhere are inharmonious." Id. at 694. Thus, this court concluded that "[t]he submission of the matter to this court was, therefore, a proceeding for the benefit of the estate and in the interests of all the parties concerned." Id. at 695.

Interestingly, the Evans court distinguished that case from Von Holt, where this court held that "[i]t is well established that fees of counsel for a litigant whose interest is contingent cannot be allowed out of the trust fund." Von Holt, 23 Haw. at 248. The Evans court explained:

> The circumstances of this case are different from those involved in Von Holt v. Williamson, . . . where the successful party established a right to certain income by way of a resulting trust, and in which claims of counsel for fees were disallowed. The decision in that case is consistent with the view that where litigation is in advancement of, and not in opposition to, the interests of all the beneficiaries of a trust counsel fees may be allowed to be paid out of the corpus of the trust fund.

23 Haw. at 695.

Under our caselaw, the proper inquiry when determining if a trust litigant's participation advanced the interests of all the trust beneficiaries requires a determination on the merits, followed by a determination of whether the litigant's appearance assisted in clarifying the duties of the trustee in

the face of an ambiguity.  See Valentin, 26 Haw. at 498 ("The

appearance of these [adverse] parties, with their conflicting

claims, their evidence and their arguments, was of assistance to

the court in its determination of the duty of the trustees.").

Because the probate court's determination of the merits of the

case was vacated by the ICA due to its failure to enter an HPR

Rule 20(a) order, the probate court's denial of attorneys' fees

must also be vacated.

**C.    The Circuit Court Abused Its Discretion in Denying the
        Cooks Attorneys' Fees and Costs Because It Based Its
        Decision on an Erroneous Statement of Law**

We address the probate court's reasoning in denying

the Cooks attorneys' fees solely to provide guidance to the

probate court on remand.  We conclude that the probate court

based the denial on an erroneous view of the law.  See In re Tr.

Agreement Dated June 6, 1974, 145 Hawai'i at 309, 452 P.3d at 306

(quoting Chun v. Bd. of Tr. of Emp. Ret. Sys., 106 Hawai'i 416,

431, 106 P.3d 339, 354 (2005) ("An abuse of discretion occurs

when a trial court 'has clearly exceeded the bounds of reason or

has disregarded rules or principles of law or practice to the

substantial detriment of a party litigant.'")).

In its findings of fact and conclusions of law, the

probate court concluded that the Cooks were not entitled to

attorneys' fees because (1) the Cooks are contingent remainder

33

beneficiaries and (2) the Cooks' position "did not benefit the interests of all beneficiaries." Specifically, regarding the award of attorneys' fees to contingent remainder beneficiaries, the probate court concluded that, under <u>Von Holt</u>, fees were not permissible.

As discussed above, the correct inquiry for the probate court is not whether the party-litigant is a contingent remainder beneficiary but rather whether their position was in the best interest of the trust as a whole. See <u>Valentin</u>, 26 Haw. at 498; <u>In re Estate of Campbell</u>, 46 Haw. at 522, 382 P.2d at 953. Thus, the probate court's conclusion of law was erroneous.

Further, as a separate basis for its denial, the probate court concluded the Cooks' position "did not benefit the interests of all beneficiaries" because it found that the Cooks' declarations were self-serving. In reaching this conclusion, the probate court again applied the incorrect standard.

The proper inquiry for determining whether a trust litigant's participation advanced the interests of all the beneficiaries of the trust includes whether the party's appearance assisted in clarifying the duties of the trustee in the face of an ambiguity. See <u>Valentin</u>, 26 Haw. at 498. The Cooks' position that distributions of trust principal would be inappropriate effectively advocated for maintaining the status

quo, with distributions being limited to the income.  The probate court did not address whether this position was in the best interest of the trust.  The probate court also did not address whether the Cooks' position would have benefited David's issue, should he have children, and was thus in the interest of the trust as a whole.  See In re Estate of Campbell, 46 Haw. at 508, 382 P.2d at 946 (explaining that "it is recognized in these cases that the principal of the trust is to remain intact to provide an income for the grandchildren as well as others" and that wrongful depletion of corpus is a potential loss to future takers).  Further, the probate court did not directly address whether "[t]he appearance of these parties, with their conflicting claims, their evidence and their arguments, was of assistance to the court in its determination of the duty of the trustees."  See Valentin, 26 Haw. at 498.

On remand, the probate court should, consistent with this opinion, determine whether the Cooks' participation in the trust litigation advanced the interests of all the beneficiaries of the trust.  A proper determination would include whether the Cooks' participation assisted the probate court in clarifying the duties of the trustee in the face of an ambiguity.  See Valentin, 26 Haw. at 498.

## V.    CONCLUSION

For the foregoing reasons, the ICA's November 20, 2024, Judgment on Appeal is vacated to the extent that it affirmed in part the probate court's March 5, 2021 "Order Granting Petition for Instructions Regarding Principal Distributions and Attorneys' Fees, and for Modification of Trust" as to the denial of the Cooks' request for attorneys' fees.  The ICA's Judgment on Appeal is otherwise affirmed.  This case is remanded to the probate court for proceedings consistent with the opinion of this court.

| | |
|---|---|
| Thomas E. Bush<br>for petitioners/appellants<br>Kristin Linae Cook Kline,<br>Larry Thomas Cook, Cathy<br>Leann Cook Bornhorst,<br>Susan Kay Cook Galvin and<br>Jodi Charlene Cook Bosben | /s/ Mark E. Recktenwald<br><br>/s/ Sabrina S. McKenna<br><br>/s/ Todd W. Eddins<br><br>/s/ Lisa M. Ginoza |
| Summer G. Shelverton and<br>Caitlin M. Moon<br>for respondent/appellee<br>David Short | /s/ Vladimir P. Devens |
| Rosemarie S.J. Sam,<br>Deirdre Marie-Iha and<br>Kellie K.L. Wong<br>for respondent/appellee<br>First Hawaiian Bank | |

